**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ODIN ENTERPRISES, INC.,

    Plaintiff,

v.                                                      Case No: 8:24-cv-1594-TPB-SPF

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY,

    Defendant.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART**
**"WESTCHESTER SURPLUS LINES INSURANCE COMPANY'S**
**MOTION FOR FINAL SUMMARY JUDGMENT"**

This matter is before the Court on Defendant "Westchester Surplus Lines Insurance Company's Motion for Final Summary Judgment," filed on November 25, 2024. (Doc. 22). On December 16, 2024, Plaintiff Odin Enterprises, Inc., filed a response in opposition. (Doc. 23). On December 23, 2024, Defendant filed a reply. (Doc. 24). The Court held a hearing to address this and other matters on January 23, 2025. (Doc. 28). Upon review of the motion, response, reply, court file, argument of counsel, and the record, the Court finds as follows:

**Background**

This case presents a fairly typical commercial insurance coverage dispute. Defendant Westchester Surplus Lines Insurance Company insured Plaintiff Odin Enterprises, Inc.'s property located at 308 Avanda Ct. in Clearwater, Florida. On November 1, 2021, Plaintiff made a claim for damage when the property's aged,

cast-iron plumbing system caused a plumbing backup. Following an initial inspection, Defendant paid $21,852.99 for interior water damage resulting from the plumbing backup. Defendant continued to investigate and reinspected the property with an engineer and leak detection company to determine if there was any further covered damage.

The continued investigation revealed that the property's cast-iron plumbing system, which ran underneath the property, had deteriorated due to age and wear and tear. Defendant denied Plaintiff's claim for damage to the underground pipes, asserting that (1) the underground pipes were not covered property under the policy; (2) the damage to the pipes resulted from excluded wear, tear, and deterioration, and (3) the damage to the pipes preexisted the date of loss.

Plaintiff filed a complaint in state court asserting a breach of contract claim. Defendant removed the case to this Court, and Defendant filed a motion for summary judgment based on policy coverage issues.

## **Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A properly supported motion for summary judgment is not defeated by the existence of a factual dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Only the existence of a genuine issue of material fact will preclude summary judgment. *Id.*

The moving party bears the initial burden of showing that there are no

genuine issues of material fact. *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004). When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing the existence of genuine issues of material fact. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995). If there is a conflict between the parties' allegations or evidence, the nonmoving party's evidence is presumed to be true and all reasonable inferences must be drawn in the nonmoving party's favor. *Shotz v. City of Plantation*, 344 F.3d 1161, 1164 (11th Cir. 2003).

Federal courts apply state law in construing insurance policies, and the parties agree that Florida law governs this dispute. *See Travelers Indem. Co. v. PCR Inc.*, 326 F.3d 1190, 1193 (11th Cir. 2003). In Florida, an insurance policy should be "construed according to the plain language of the policy," and any ambiguities must be "construed against the insurer and in favor of coverage." *Desai v. Navigators Ins. Co.*, 400 F. Supp. 3d 1280, 1288 (M.D. Fla. 2019) (citing *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005)); *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003). An ambiguity exists where the relevant policy language is susceptible of more than one reasonable interpretation, after applying the ordinary rules of construction. *See, e.g., Travelers Prop. Cas. Co. of Am. v. Salt 'N Blue LLC*, 731 F. App'x 920, 923-25 (11th Cir. 2018) (citing *Taurus Holdings,* 913 So. 2d at 532). Insurance contracts are to be read in a common-sense and natural manner. *See Travelers Indem. Co. of Conn. v. Richard McKenzie & Sons, Inc.*, 10 F.4th 1255, 1264 (11th Cir. 2021).

It is well-settled that "the interpretation of an insurance policy is a question of law to be decided by the Court." *Desai*, 400 F. Supp. 3d at 1288 (citing *Goldberg v. Nat'l Union Fire Ins. Co. of Pittsburgh PA*, 143 F. Supp. 3d 1283, 1292 (S.D. Fla. 2015)); *see also Chestnut Associates, Inc. v. Ass. Co. of Am.*, 17 F. Supp. 3d 1203, 1209 (M.D. Fla. 2014); *Szczeklik v. Markel Int'l Ins. Co.,* 942 F. Supp. 2d 1254, 1259 (M.D. Fla. 2013).

## Analysis

Initially, it should be noted that Plaintiff is not seeking damages for mold or asbestos remediation, nor is Plaintiff seeking "matching damages." Therefore, based on Plaintiff's concessions, the Court concludes that any such damages are excluded under the policy. Plaintiff is also not pursuing costs to replace the damaged pipes themselves – the parties agree that the policy at issue does not provide coverage to replace the deteriorated pipes. The parties disagree, however, on whether the policy provides coverage for the ensuing water damage and tear-out costs associated with replacing the pipes.

The policy provides for "additional coverage extensions"– if loss or damage resulting from covered water damage occurs, Defendant will pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water escapes. *See* (Doc. 22-1 at 54). Therefore, as a matter of law, the policy specifically provides coverage for tear-out costs associated with covered water damage. *See Floyd v. GeoVera Specialty Ins. Co.*, 2020 WL 998690, at *4 (M.D. Fla. Mar. 2, 2020); *see also Deputy v. Hartford Ins. Co. of the*

*Midwest*, No. 8:19-cv-16970T-33JSS, 2020 WL 5807997, at *14-15 (M.D. Fla. June 1, 2020).

The question then becomes whether the damage at issue in this case constitutes covered water damage.  Under the policy, Defendant is not required to pay for loss or damage caused by "wear and tear; rust or other corrosion, decay, deterioration hidden or latent defect or any quality in property that causes it to damage or destroy itself" unless such excluded cause of loss results in a "specified cause of loss."  *See* (Doc. 22-1 at 55).  "Specified causes of loss" means, among other things, "water damage."  *See* (Doc. 22-1 at 55).  "Water damage" is defined as "[a]ccidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam."  *See* (Doc. 22-1 at 55).

However, water damage does not include loss or damage otherwise excluded under the terms of the water exclusion.  *See* (Doc. 22-1 at 47).  Defendant asserts that the claimed loss falls within Paragraph 3 of that exclusion: "Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump, or related equipment."

The Eleventh Circuit, relying on a Florida appellate decision, has held that substantially similar or identical policy language did not exclude a claimed loss because the water exclusion related only to water damage caused by outside forces

unrelated to the plumbing system, such as weather-induced flooding. *See Cameron v. Scottsdale Ins. Co.*, 726 F. App'x 757, 762-63 (11th Cir. 2018) (citing *Cheetham v. Southern Oak Ins. Co.*, 114 So. 3d 257 (Fla. 3d DCA 2013)). The Court agrees that like the exclusions in *Cameron* and *Cheetham*, the exclusion here "pertains to damage caused by water not originating from the residence premises' plumbing system even though the water or water-borne material eventually backs up through a pipe and/or drain within the plumbing system of the residence premises." *Id.* at 762 (quoting *Cheetham*, 114 So. 3d at 262-63). Consequently, "[b]ecause the claimed loss in this case was caused not by water originating from somewhere other than the premises' plumbing system, but rather by the age-related deterioration of the plumbing system, the Water Exclusion does not apply." *See id.* at 763.

Defendant further contends that the water damage and tear out costs are also excluded because the deterioration of the plumbing system directly led to another excluded risk under the policy – "repeated seepage or leakage of water." To be sure, the policy provides that Defendant will not pay for loss or damage caused by or resulting from "continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more." *See* (Doc. 22-1 at 48). Defendant argues that Plaintiff reported multiple backups occurring on February 24, 2021, June 2, 2021, and October 25, 2021, demonstrating "repeated seepage or leakage of water" over a ten-month time period. Even if the deterioration of the plumbing system, and back-ups occurred on those dates, it does not necessarily follow that the claimed loss or

damage was the result of continuous or repeated seepage or leakage – there is simply not enough evidence in the record at this time to establish the "continuous or repeated seepage or leakage of water. . . over a period of 14 days or more." As such, it is not clear whether the undisputed factual evidence would support the application of the repeated seepage or leakage exclusion.

Finally, Defendant argues that the policy excludes pre-existing damages – that is, damages that were caused by property damage that existed prior to the time of the claimed loss. (Doc. 22-1 at 11). This argument is not sufficiently developed and would appear to turn on factual determinations that are not before the Court at this time.

## Conclusion

The policy generally excludes coverage for wear and tear and corrosion *unless* that cause of loss that results is a "specified cause of loss" that includes "water damage," which is defined as the accidental discharge of water as the result of a breaking apart or cracking of a plumbing system. The policy therefore covers water damage that results from an overflow caused by a property's deteriorated plumbing system unless that damage is excluded elsewhere in the policy. The general water exclusion cited by Defendant is not applicable. *See Cameron* 726 F. App'x at 762-63. But there appear to be factual questions about the possible application of exclusions such as the pre-existing damage exclusion and repeated seepage or leakage of water exclusion. These questions cannot be resolved at this stage of the proceedings without a more developed factual record.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) "Defendant "Westchester Surplus Lines Insurance Company's Motion for Final Summary Judgment" (Doc. 22) is **GRANTED** to the extent that damages claimed for mold or asbestos remediation, the damaged pipes themselves, and "matching damages" are excluded under the policy.

(1) The motion is otherwise **DENIED WITHOUT PREJUDICE**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 20th day of February, 2025.

_____
TOM BARBER
UNITED STATES DISTRICT JUDGE